IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Debra Dawkins,                               )
                                             )        Civil Action No. 7:07-1157-HMH-BHH
                    Plaintiff,               )
                                             )
        vs.                                  )        **REPORT AND RECOMMENDATION**
                                             )        **OF MAGISTRATE JUDGE**
                                             )
Milliken & Company,                          )
                                             )
                    Defendant.               )
_____)

        This matter is before the Court on the parties' cross-motions for summary judgment

pursuant to Federal Rule of Civil Procedure 56. [Docs. 37, 53.]  The plaintiff claims that, in

the termination of her employment, the defendant interfered with her rights under the Family

and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq* and retaliated against her for

taking leave pursuant to the same.  The plaintiff has also pled state law claims for breach

of contract, breach of contract accompanied by a fraudulent act, and breach of the implied

covenant of good faith and fair dealing.  The plaintiff's motion seeks partial summary

judgment as to her FMLA interference claim.  The defendant's motion seeks dismissal of

all of the plaintiff's claims.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and

Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases

are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

        The defendant is a Delaware corporation that conducts substantial business in South

Carolina.  (Def. Ex. A ¶ 2.) The defendant is in the textile business and has a plant called

Magnolia Finishing in Blacksburg, South Carolina. (Def. Ex. B ¶ F.)  The Magnolia Plant

manufactures and treats fabric. (Def. Ex. C at 13-14.)

During her employment at Milliken, the plaintiff worked as an inspector.  (Def. Ex. D at 29.)  The plaintiff was one of approximately thirty inspectors whose job was to inspect finished fabric as it runs through a machine to identify defects that would then be flagged or removed. (Id. at 34; Def. Ex. C at 32.)  If the plaintiff discovered defective fabric, it was her job to separate the defective fabric from the good fabric, and flag the defective fabric to be sent to other departments. (Def. Ex. D at 34-35.)  The plaintiff was also responsible for removing samples of good fabric ("lab submits") and sending them to a Milliken laboratory for testing. (Id. at 35-36.)

The plaintiff's mother became ill in 1993.  (Def. Ex. N Resp. Interrog. No. 9). She began living with the plaintiff approximately five (5) years before the plaintiff's employment was terminated.  (*Id.*)  The plaintiff first took FLMA leave in November 2003. (Def. Ex. Y.) Throughout her employment, the defendant regularly approved Dawkins' requests for leave under the Family and Medical Leave Act ("FMLA").  (Def. Ex. L.)  For example, the plaintiff took thirty-three full and nine partial days off of work as approved intermittent FLMA leave in 2006.  (Def. Ex. H.)  The plaintiff also took 34 full and 4 partial days of FMLA leave in 2005 and 75 full days and 1 partial day of FMLA leave in 2004. (Def. Exs. Z; AA.)

Deanna Norris was the plaintiff's direct supervisor.  She was promoted to the position of Production Manager in October 2006.  (Def. Ex. C at 16-17).  On October 5, 2006, Norris held meetings with her associates to discuss her new call-in procedures, vacation requests, mandatory team meetings, safety, quality, overtime, and other policies.  (Def. Ex. D at 38-39; Ex. C at 19-20; Ex. M Resp. Interrog. No. 8).  Norris gave the plaintiff and other QA associates a one page document, entitled "Read All About It!" (hereinafter the "call-in policy").  (Def. Ex. P).  This document provided all of Norris' work and personal telephone numbers and instructed the Associates that:  In any event that you will be absent or late you must notify **both** work and Deanna. Failure to do so will result in an **unexcused absence**.

2

You must leave a message." (*Id.*) (emphasis in original). The defendant claims that the plaintiff was inconsistent in her ability to comply with this policy.

On November 28, 2006, the plaintiff failed to cut "lab submits." (Def. Ex. M Interrog. No. 8; Ex. H at 000323.) "Lab submits" are pieces of fabric approximately three yards long, that are sent to a Milliken laboratory for testing of the physical properties of the fabric before sending it to customers. (Def. Ex. C at 40.) The plaintiff had twice before been verbally warned and counseled concerning the matter. (Def. Ex. M Interrog. No. 8; Ex. C. at 41-43; Ex. H at 000323.) As a result the plaintiff was issued a written Associate Reprimand for violating Milliken policy 1.10J – Refusing to work properly or follow instructions related to the proper submission of lab and sample submits. (Ex. N Resp. Interrog. No. 16; Ex. J.) The Associate Reprimand specifically notes that the plaintiff was previously counseled on October 12, 2006 for the same offense regarding failing to cut lab submits and noted that "[a]ny further occurrence will result in disciplinary up to and including termination." (Ex. J).

On January 15 and 16, 2007, the plaintiff needed unanticipated time off to care for her mother due to her illness. (Pl. Dep. at 145-46, 181-85.) The plaintiff claims that she called Norris pursuant to the call-in policy numerous times on January 15 and 16 and left voice messages. She has submitted phone records evidencing eight total calls on those two days. (Pl. Ex. 7 at 23.) It is undisputed that the plaintiff also called other supervisors in the Quality Assurance department on January 15 and 16, respectively. The defendant contends, however, that Norris received no messages or calls whatsoever on those two days from the plaintiff. (Def. Ex. C at 57-58.)

On January 17, 2007 Norris counseled Dawkins about her failure to call on two previous occasions, December 20 and 22, 2006. (Def. Ex. I; Ex. T; Ex. C at 51-52, 56.) Norris further counseled the plaintiff on January 17, 2007 about her failure to call on January 15 and 16, 2007. (Def. Ex. C at 51-52; Ex. I; Ex. T; Ex. M Interrog. No. 8.) Norris had already counseled the plaintiff on December 19 concerning similar failures to follow the

3

call-in procedures on December 7 and December 18.  (Def. Ex. H at 000324, 12-19-06 entry; Ex. C, pp. 46-47).  As a result of her alleged failure to call Norris on January 15 and 16, the plaintiff was issued an Associate Reprimand for violating Milliken policy 1.10J – refusal to follow instructions.  (Def. Ex. K.)

The plaintiff's employment was terminated the next day, January 17, 2007, after the plaintiff met with Norris and Kevin Hall, Plant Human Resources Manager.  The defendant contends that Stephen Giles, General Counsel, Human Resources, decided that it was appropriate to terminate the plaintiff's employment based on the representations of Norris and Hall. (Ex. U at 24-27).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

4

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

I.    **FMLA CLAIMS**

The plaintiff first claims that her employment was terminated for taking FMLA leave, generally, and for taking leave on January 15 and 16, specifically.  The defendant contends that the plaintiff's employment was terminated not for her use of FMLA leave but because of her habitual non-compliance with its call-in policy and other work instructions.

There are two types of claims available to employees under the Family and Medical Leave Act ("FMLA"):  interference and retaliation.  *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 545-46  (4th Cir. 2006).  Claims of alleged violations of an employee's prescriptive rights under the FMLA – known as "interference" or "entitlement" claims – arise under 29 U.S.C.A. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  *Id*.  In addition to these prescriptive rights and protections, the FMLA "also contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko*, 446 F.3d at 546.  Known as "retaliation" or "discrimination" claims, causes of action alleging violations of these proscriptive rights arise under 29 U.S.C.A. § 2615(a)(2), which states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  *Id*. (quotations omitted).  Contrary to the defendant's assertion, the plaintiff has pled both.  (Compl ¶¶ 12, 13.)

A.    **Interference Claim**

To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to

6

which she was entitled. *Rodriguez v. Smithfield Packing CO., Inc.,* 2008 WL 1000471, at *5 (D. Md. March 14, 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir.2006)); *see generally Rhoads v. F.D.I.C.*, 257 F.3d 373, 384-85 (4th Cir. 2001). The defendant concedes the first three elements but argues that the plaintiff did not provide notice in accordance with its policies and has never been denied FMLA benefits. (Def. Mem. Supp. Summ. J. at 18.)

It is undisputed that the plaintiff requested and has been granted intermittent FMLA leave in excess of 130 times over a three year period, from 2004-2006. (Def. Exs. H, Z, AA.) Even on January 15 and 16, 2006, the days at issue in this case, she was not expressly refused FMLA leave. The defendant argues, therefore, that the plaintiff has never been refused leave and that she cannot demonstrate that the defendant ever expressly denied benefits to which she was entitled. This district, however, has recognized that a cause of action based on the termination of an employee for taking FMLA protected leave is properly analyzed as an interference cause of action as well as one for retaliation. *See Bowman v. Holopack Intern. Corp.*, 2007 WL 4481130, at * 10 (D.S.C. December 19, 2007). *Bowman* relied, in part, on *Reid v. Smithkline Beecham Corporation*, 366 F. Supp. 2d 989, 998 (S.D. Cal.2005), which recognized that the "FMLA makes clear that where an employee is subjected to negative consequences simply because he has used FMLA leave, the employer has interfered with the employee's FMLA leave rights." *Id.* (quotations omitted; quoting *Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir.2003)). In other words, termination for taking leave can be viewed as interference even though it occurs proscriptively. The mere fact that the plaintiff actually took the FMLA leave does not, of itself, eliminate any question as to an interference claim. If the defendant terminated her

7

for not giving proper notice,[1] when she, in fact had, then it has improperly interfered with her FMLA rights.

The question, therefore, is whether she gave proper notice of her need for FMLA leave. The defendant contends that the plaintiff did not give sufficient notice because she failed to call her direct supervisor, Deanna Norris, as the call-in policy required. The undisputed policy of the defendant in regards to absences is that employees of Norris are required to contact her directly if they are not going to be able to work on a particular day. Norris provided a document entitled "Read All About It!" to each of her associates (hereinafter the "call-in policy"), including the plaintiff, which read as follows:

> In any event that you will be absent or late you must notify **both** work and Deanna. Failure to do so will result in an **unexcused** absence. You must leave a message.

(Def. Ex. P (emphasis in original).) The written notice provided each of the employees with Norris' work and personal telephone numbers, including her cellular phone. *Id*. The plaintiff signed a sheet acknowledging that she attended the meeting. (Ex. Q.) The plaintiff readily admits her awareness of the policy; in fact, she claims at all times she complied with the same. (Def. Ex. N. Resp. Interrog. No. 12.)

The FMLA specifically allows employers to require employees to comply with "the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. §825.302(d); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002). Employees may be excused from providing contemporaneous notice to their employers only under "extraordinary circumstances where such notice is not feasible." 29

---

[1]    The defendant obviously does not characterize the basis of the plaintiff's termination as a failure to give proper notice of FMLA leave. Instead, the defendant argues that the plaintiff was simply terminated for failing to follow instructions, namely the requirement that she must call her supervisor. Of course, if the defendant was wrong about the plaintiff's non-compliance or if the call-in policy is impermissible, then the effect of the defendant's decision is the same as if the defendant had concluded that notice of FMLA leave was not proper. Because liability for an interference claim is strict, as will be discussed in greater detail *infra,* the defendant's semantical position is a distinction without a difference.

C.F.R. §825.303(a). As one court has explained, "[n]otice enables an employer to keep its business operating smoothly by bringing in substitutes or hiring temporary help." *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir 2000) (employee's obligation to give notice under collective bargaining agreement is "usual and customary" requirement)).

The plaintiff makes two arguments in regards to the call-in policy. First, she argues that she complied with it. Second, she contends that the policy requires more notice than the FMLA and, therefore, is violative of the same. The Court will address each argument in turn.

As to her compliance with the call-in policy, the plaintiff has produced evidence that, on January 15 and 16, she called Donna Cole and Tammy Tate, respectively, both of whom are members of the Quality Assurance team to inform them that she would be taking FMLA leave to care for her sick mother. (Pl. Dep. at 145-47, 181-85.)

Most critically, however, the plaintiff has submitted evidence that she fully complied with the policy by calling Norris, on her cell phone (see Def. Ex. P (490-6797)), no less than **seven times** on January 15, including a 90 second call at 6:30 a.m., and once on January 16, a call that lasted 110 seconds. (Pl. Ex. 7 at 23.) Those calls are circumstantial evidence that a message was left. Further, the plaintiff testified that she did, in fact, leave messages on Norris' cell phone. (Pl. Ex. 1 at 142, 176-77, 182, 209-210; Def. Ex. C. at 57-58.) As far as the Court can tell, the defendant has not submitted any evidence of Norris' telephone records that would reflect differently. Further, it appears undisputed that Norris, in fact, had actual notice of the plaintiff's FMLA leave for those two days, whether or not she actually heard a message or not. (Pl. Ex. 6; Ex. 3 at 52-55.)

Accordingly, there exist genuine issues of fact as to whether the plaintiff complied with the defendant's call-in policy. The plaintiff has come forward with evidence from which a reasonable jury could conclude that she has satisfied the fourth element of her interference claim that she gave proper notice and notice consistent with company policy.

9

In the same way, the plaintiff has created an issue of fact in regards to the fifth element of her claim.  If she was entitled to FMLA, which the parties agree that she was, and she gave proper notice, then the defendant's termination of her employment constitutes a constructive denial of entitled FMLA benefits.  *See Bowman*, 2007 WL 4481130, at * 10 (D.S.C. December 19, 2007).  In *Bowman*, the district court stated:

> It could be argued, of course, that Plaintiff's job being eliminated because she exercised her leave rights under the FMLA sets up a classic retaliation scenario, and that Plaintiff's "interference" claim should therefore be dismissed, with her claim instead being evaluated solely under her "retaliation" cause of action. However, the caselaw appears to allow both an interference and a retaliation claim to go forward based on the facts presented [termination].

*Id*.

The defendant argues, however, that even if the plaintiff did comply with the call-in procedure, it cannot be held liable for any interference claim because she was not terminated for taking FMLA leave but rather for malfeasance.  By extension, therefore, the defendant argues that simple misapplication of its own policy, even if it were in error about her compliance, does not rise to the level of interference with FMLA benefits.  The Court disagrees.

First, it appears that in contrast to a retaliation claim, a plaintiff bringing an interference claim does not have to prove that the defendant intended to interfere with the plaintiff's FMLA rights.  *See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).  The liability is strict.  *See Blankenship v. Buchanan General Hosp.*, 140 F. Supp.2d 668, 672 (W.D. Va. 2001) ("Based on the mandatory language of the FMLA and its legislative history, the court reasoned that interference claims should be governed by a strict liability standard.")  It is enough that she was entitled to it, gave proper notice, and the defendant denied it.  Second, as already discussed, the termination itself is a constructive denial even if not an express one.  *See Bowman*, 2007 WL 4481130, at * 10.  Accordingly, the defendant cannot hide behind the

10

shield of any mistake concerning its policy.  A reasonable jury could conclude that the sum effect of the defendant's decision to terminate the plaintiff was to interfere with FMLA benefits she was otherwise entitled to.

Because there is evidence that the plaintiff actually called Norris on the days in question, it would appear that the plaintiff is actually entitled to summary judgment on the claim. The Court agrees with the defendant, however, that the phone records themselves are not conclusive evidence that a message was actually left, as required by the defendant's call-in policy. [See Doc. 64.]  The duration of at least two of the phone calls is certainly strong circumstantial evidence that a message was left, but ultimately the matter is a credibility determination for the jury as between the accounts of the plaintiff and Norris concerning whether or not a message was left.

The Court, however, rejects the defendant's insinuation that the evidence is essentially worthless.  While a jury might, in fact, conclude that the defendant's decision to terminate the plaintiff was "based upon a good-faith belief that [the plaintiff] failed to follow the call-in policy," as the defendant would argue, it might also conclude that something more invidious was at work.  The Court cannot simply decide to believe Norris over the plaintiff, as is urged.  The defendant tries to diminish the relevance of the phone records as proof of "virtually nothing" more than "that several unidentifiable computers owned by Verizon communicated withone another at some point," but the argument is not colorable. The plaintiff has actually produced everything she could possibly produce in this regard. She has sworn that she called and left messages and has produced phone records evidencing, in the least, eight phone calls on the days in question.  She cannot produce the actual messages because those are in the control of Norris and the defendant, if they exist or existed at all.  Only a jury can weigh such evidence.

Alternatively, the plaintiff argues that, even if she did not comply with the defendant's call-in policy, the defendant interfered with her FMLA rights insofar as the call-in policy

imposes a greater notice requirement than the FMLA itself and, therefore, by definition interferes with her rights to the extent she is penalized for non-compliance with the same. Thus, the question is whether the defendant can impose a notice policy that requires employees to call a particular supervisor. On this issue there is a circuit split and it does not appear that the Fourth Circuit has addressed the issue specifically.

The Sixth Circuit has concluded that although an employer may have its own notice requirements, an employer may not impose requirements that are more stringent than those found in the FMLA. *Cavin v. Honda of America Mfg. Corp.*, 346 F.3d 714, 723 (6th Cir. 2003). In *Cavin*, the employer's policy, when leave was unforeseeable, required an employee to notify the Leave Coordination Department of the need for leave "no later than the third day missed." *Id.* at 720-21. After analyzing the FMLA and the regulations, the court held that the employer could not enforce its internal notice policy, requiring an employee to specifically notify the employer's Leave Coordination Department of his need for leave no later than the third day of work missed when the employee provided sufficient notice under the FMLA requirements. *Id.* at 723.

The Seventh and the Tenth Circuits have come to the opposite conclusion. *See Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706 (7th Cir. 2002); *Holmes v. Boeing Co.*, 1999 WL 9760, at *3 (10th Cir. Jan. 12, 1999). In *Lewis*, the Seventh Circuit concluded that an employer could enforce a "usual and customary" notice policy so long as "it was not impossible" for the employee to do so under the circumstances. *Lewis*, 278 F.3d at 710. The Tenth Circuit specifically concluded that "the FMLA does not prohibit an employer from requiring its employees to give notice to specific company supervisors on the day the employee is going to be absent in a nonemergency situation," as in this case. *Holmes*, 1999 WL 9760, at *3.

The Court agrees with the Seventh and the Tenth Circuits insofar as the decisions of those courts recognize the reasonable need of the employer to know of an absence in

12

order to make corresponding personnel decisions.  The Middle District of Georgia has said, "The fact that the absence might be related to a FMLA qualifying event does not abrogate the right of employers to know whether their employees will be coming to work on a particular day." *Knox v. Cessna Aircraft Co.*, 2007 WL 2874228, at *5 (N.D. Ga. September 26, 2007).  Without advance notice that an employee will be absent, employers are unable to make arrangements to have somebody else fill in for the absent employee.  *Spraggins v. Knauf Fiber Glass GmbH, Inc.*, 401 F.Supp.2d 1235, 1239-40 (M.D. Ala.2005); *see also Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 878 (10th Cir.2004); *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 971 (7th Cir.2000).   The plaintiff readily admits that this was precisely the reason for the defendant's policy requiring employees to contact Norris directly:  "It was important just in case if one of us was going to be out, they needed to know so that they could cover the shift ahead of time; have someone work in our place."  (Pl. Dep. at 39.)

There is no debate as to whether the plaintiff was able and capable of complying with the policy; it is her claim that she, in fact, did.  Accordingly, the Court finds that the call-in policy itself does not violate the FMLA.  If a jury, therefore, could not find that the plaintiff actually complied with it, then she would not be entitled, as a matter of law, to recover on the grounds that the policy itself was wrongful interference with her FMLA rights.

The Court, however, finds that the plaintiff's interference claim survives summary judgment because she was entitled to benefits and has produced evidence of proper notice and conformity with the defendant's call-in policy.

### B.    FMLA Retaliation Claim

On the same facts, the plaintiff has also pled an FMLA retaliation claim.    To establish a claim for retaliation under the FMLA, the plaintiff may rely on a modified version of the *McDonnell Douglas* proof mechanism. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).  The plaintiff must make out a *prima facie* case of retaliation by

establishing that (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *See Dodgens v. The Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997). If she succeeds in establishing a *prima facie* case, the defendant has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the defendant does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the plaintiff to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff may also rely on ordinary principles of proof, using direct or indirect evidence. to establish her claim, in lieu of the *McDonnell Douglas* proof scheme.[2]  *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996).

### A.    *Prima Facie* Case

The Court finds that the plaintiff has established a *prima facie* case. The defendant makes no real attempt to argue to the contrary. There is no dispute but that the plaintiff "engaged in a protected activity (taking FMLA leave) and that [s]he experienced an adverse

---

[2]  Although the Court has not located a Fourth Circuit decision that expressly states that a plaintiff may rely on the ordinary principles of proof in an FMLA case, it is only a logical conclusion and one consistent with the court's treatment of retaliation cases under every other related statutory scheme. *See, e.g.*, *Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) (ADA); *Burns*, 96 F.3d 728 (ADEA); *Diamond v. Bea Maurer, Inc.*, 128 Fed. Appx. 968 (4th Cir. 2005) (Title VII).  Moreover, in this District, FMLA retaliation claims are analyzed in accordance with the principles used in Title VII retaliation claims. *See Dodgens*, 955 F. Supp. at 566.

It should also be noted that in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003), other jurisdictions have permitted plaintiff's to use the mixed-motive framework to demonstrate that retaliation for taking FMLA leave was a "motivating factor" in the termination decision, even if their exist other legitimate, non-discriminatory reasons for termination, like performance. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

Regardless of the articulation, in this case, the plaintiff is not bound to make her proof through the *McDonnell Douglas* scheme exclusively, nor is she required, necessarily, to prove that the nondiscriminatory reasons for her termination were pretext. She may use ordinary principles of proof to demonstrate that her FMLA leave was a motivating factor in the decision to terminate her employment. *See id*. Notwithstanding, the plaintiff has not produced any such evidence.

employment action [termination]." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). As to the third element of her *prima facie* case, causation may in some cases be demonstrated by the temporal proximity between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 661-62 (W.D.N.C. 2005); *Blankenship v. Buchanon Gen'l Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001). In this case, it is undisputed that the plaintiff's employment was terminated on January 17, the day after the absences in question.

The Fourth Circuit has held that "very little evidence of a causal connection is required to establish a prima facie case . . . ." *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998). Three and five month periods of time have been found sufficiently small to establish a causal connection for purposes of a plaintiff's *prima facie* case. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). Certainly a day's time is sufficient to create an inference of causation for purposes of the *prima facie* case. Accordingly, the Court is persuaded that the plaintiff has created at least a genuine issue of fact as to the causation element of her *prima facie* case.

### B.    Legitimate, Non-Discriminatory Reason

As discussed, the defendant has advanced the plaintiff's failure to comply with its call-in policy as the reason for her termination. Non-compliance with an employer's notice requirements constitutes a legitimate, non-discriminatory reason for termination. *See Lewis*, 278 F.3d 706, 711; *Holmes*, 1999 WL 9760, at *3.

15

### C.     Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)   As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.  *See id.* at 144.

The Court has already concluded that the plaintiff has brought forward evidence from which a jury might conclude that the defendant's reason for termination of the plaintiff's employment was not the real one.  The defendant has stated that the plaintiff's employment was terminated for failing to call Norris and leave a message concerning her absences on January 15 and 16.  The plaintiff has produced evidence that all but demonstrates that the defendant is wrong in this regard.  Whether the defendant was simply mistaken or has offered this explanation as a pretext for denying the plaintiff FMLA benefits, the Court may not decide.  But, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Id.* at 147.

The defendant emphasizes that the inquiry is not whether the decision was "wise, fair or correct,' but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs.'"  *Kaster v. Safeco Ins. Co. Of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002).   To that end, the defendant argues that Stephen Giles, General Counsel, Human Resources, and not Norris made the decision to terminate the plaintiff and that he made a good-faith decision based on the facts before him.  The Court agrees with the defendant that the plaintiff cannot prevail on her retaliation claim if the evidence suggests that the decisionmaker honestly believed that she had violated company policy.  *See Brown v. Conopco, Inc.*, 2007 WL 3224586, at *8 (D. Md. October 24 2007) ("What

16

matters is that Unilever honestly believed she was, and believed Mr. Brown had fraudulently claimed the day as FMLA leave when in fact it was not being used for that purpose."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1156-66 (1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

In this case, the call is a close one.  Regardless of whether Norris and/or Giles should be considered the decisionmaker of the defendant, the defendant's evidence shows that Norris and Kevin Hall, Plant Human Resources Manager, checked for voice mails on Norris' cell phone and heard none.  (Def. Ex. C at 60-62.)  This fact was communicated to Giles who investigated the facts; confirmed the call-in policy and the plaintiff's awareness of it; and made the decision to terminate the plaintiff's employment.  (Def. Ex. U at 7; Ex. C at 72-73; Ex. V at 16-17; Ex. W.)  These facts certainly weigh in favor of the sincerity of the decisionmaker's belief as to the plaintiff's non-compliance with the policy.

Notwithstanding, the Court believes that the honesty of belief of the defendant's decisionmaker is called into question by the plaintiff's phone-records evidence.  Those records make it almost indisputable that the plaintiff actually called Norris – and numerous times.  A minimally thorough investigation of the matter would have included, in the very least, a search of the phone log of Norris' cellular phone, which the Court takes notice is virtually a universal feature of such technology.  If the defendant had observed seven calls on January 15, then it would have lent tremendous credibility to the plaintiff's representation that she had left a message, even if one could not actually be recovered.  If such a search was actually performed or, conversely, was impossible, the defendant has not said so.  Likewise, a similar search of the plaintiff's phone could have easily been made on January 17.  A reasonable jury might very well conclude that the decisionmaker in this case was not particularly interested in corroborating the plaintiff's representations.

The Court does not mean to cast aspersions.  But, it seems questionable for the

17

Court to make a decision regarding the sincerity of the decisionmaker's held beliefs, when reasonable minds might disagree over the inferences permissibly drawn from the competing evidence.  *See Bowman*, 2007 WL 4481130, at *13 (D.S.C. December 19, 2007).

## II.    Breach of Contract

The plaintiff also claims that the defendant breached its employment contract with her, when it made oral assurances that she could not be fired unless she received two written reprimands for the same offense in a ***6 month*** period.  The plaintiff claims to have been given such assurances on numerous occasions.  (Pl. Dep. at 206; Pl. Aff.; Pl. Resp. to Def. Interrog. No. 18.)  Other than her own self-serving representations, there is no evidence in the record that such assurances were ever given.

The undisputed written policy of the defendant, however, is that employment may be terminated on the basis of two written reprimands for the same offense in a ***12 month*** period.  (Def. Ex. J, K.)  The policy reads:

> Repetition of an offense for which an associate has received two (2) written reprimands for the same offense or three (3) written reprimands on different subjects or offenses within twelve (12) consecutive months will subject an associate to termination.

*Id*.

The plaintiff signed her name on a written associate reprimand less than a half of an inch from this policy.  (See Def. Ex. J.)  The Court does not agree that the plaintiff has produced probative evidence that oral assurances, contrary to the written policy, were ever given.  As stated, the plaintiff's only evidence are her own representations.  She has not produced the statement of any other employee or manager that would corroborate her claim.  The Fourth Circuit has stated, "[W]e generally consider self-serving opinions without objective corroboration not significantly probative."  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996).  Under the circumstances, the Court does not believe that a jury could find that such assurances were made or that the plaintiff

18

believed those assurances altered the written policy of which she was or should have been aware.

Ultimately, however, the dispute between the parties seems irrelevant. The plaintiff spends substantial time establishing that the assurances were made. But as far as the Court can tell, the point is inconsequential. The plaintiff was reprimanded first on December 1, 2006, and then again on January 17, 2007. (Def. J, K.) Although the predicate facts were different, in both instances she was disciplined for the *same offense*, expressly -- "refusing to perform work properly or following instructions." *Id.* Whether the policy was for 6 months or 12 months, therefore, is of no moment. She was written up twice within two months time.

This fact, however, does not resolve the matter. The plaintiff still contends that the defendant violated its progressive discipline policy insofar as the second written reprimand was unwarranted. As discussed in regards to the plaintiff's FMLA claim, the plaintiff is probably correct in this regard. The issue, therefore, is whether the defendant's progressive discipline policy altered the at-will status of the plaintiff's employment such that the defendant can be liable for a violation of it. The Court concludes that it is not.

The South Carolina Supreme Court has stated that "[m]andatory, progressive discipline procedures may constitute enforceable promises." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005). "Such procedures typically provide that an employee may be fired only after certain steps are taken." *Id.* The supreme court stated further, "When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id.*

Examples of permissive language include:

> (1) the disciplinary procedure "is to be viewed as the guiding policy insofar as taking disciplinary action . . .;"
>
> (2) "supervisors are not required to go through the entire three steps involved in this disciplinary procedure;"

19

> (3) "[d]iscipline may begin at any step in the procedure depending on the seriousness of the offense committed;" and
>
> (4) "supervisor may repeat any of the first two steps of this procedure when he feels it is necessary, so long as the discipline is commensurate with the offense committed."

*Lingard v. Carolina By-Products*, 605 S.E.2d 545, 548 (S.C. Ct. App. 2004). By contrast, mandatory language employs phrases like, "will subject an employee to . . . ." *Id.*

The policies of the defendant unquestionably are permissive:

> Associates **may be** discharged for having two (2) written reprimands for the same offense or three (3) written reprimands for different offenses during any twelve (12) month period. Management will determine appropriate discipline in any situation. Associates **may be** reprimanded or discharged for violations of company rules, or for other situations not covered by company rules. Some offenses are serious enough to require immediate discharge without a prior reprimand.

(Def. Exs. H, I, J, K (emphasis added).) The defendant's policies also state:

> Management will determine appropriate discipline in any situation. Associates **may be** reprimanded or discharged for violations of company rules, or for other situations not covered by company rules. Some offenses are serious enough to require immediate discharge without prior reprimand.

(Exs. H, I (emphasis added).) Critically, the defendant emphasizes that it retains full discretion over both the contents of its policies and any disciplinary action:

> MILLIKEN & COMPANY RESERVES THE RIGHT AT ANY TIME WITHOUT NOTICE TO CHANGE, DELETE, AMEND, OR ADD TO ITS POLICIES, PROCEDURES, OR RULES UNLESS PROHIBITED BY LAW.

(Ex. F.)

> A violation of the rules subjects an associate to disciplinary action up to and including discharge, depending on the circumstances of each case. **It is within the sole discretion of the Company to decide the manner, method, means and extent in administering disciplinary action**. These rules are only a partial list of examples of conduct that are unacceptable. These rules are minimal, and **do not restrict disciplinary action from being taken on other matters not specifically listed herein**. Milliken & Company reserves the right to change,

> delete, amend, and add to its policies, procedures, and rules at any time with or without notice.

(Ex. G (emphasis added).)

"To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler*, 616 S.E.2d at 698. The defendant's policies all contain permissive language, to wit "may," and retain for the defendant full discretion over disciplinary decisions and procedures. These are the elements of a permissive disciplinary policy that will not alter the at-will nature of the employment relationship. *See Lingard*, 605 S.E.2d at 548.

Finally, the defendant's policies include a conspicuous disclaimer that nothing in the policies, procedures, or statements of the defendant will alter or limit the at-will employment relationship:

> **I AGREE THAT, IF HIRED, EITHER MILLIKEN & COMPANY OR I MAY TERMINATE MY EMPLOYMENT AT ANY TIME WITH OR WITHOUT CAUSE. I UNDERSTAND THAT NO COMPANY POLICY, PRACTICE, PROCEDURE, OR STATEMENT BY ANY COMPANY REPRESENTATIVE SHALL LIMIT OR ALTER THIS AT-WILL EMPLOYMENT RELATIONSHIP.**

(Exs. E, F (emphasis in original).) Because of the location and the font type used, this disclaimer is conspicuous as a matter of law. *See Hessenthaler*, 616 S.E.2d at 698. Had this disclaimer been included in a handbook after June 30, 2004, it would be dispositive of the matter. *See* S.C. Code § 41-1-110. Even still, the disclaimer in conjunction with the permissive language of the other policies eliminates any issues of fact as to whether or not the progressive discipline policy alters the at-will employment relationship; it does not.

Moreover, the plaintiff has not identified any oral assurances which would alter the permissive nature of the disciplinary procedures. To the extent her own representations suggest as much, the Court has already rejected them as self-serving. The plaintiff was fully aware or should have been fully aware of the permissive nature of these policies, as she signed numerous documents containing them. (Def. Exs. E, F, H, K.)

Because the plaintiff has no claim for breach of contract, her claim for breach of contract accompanied by a fraudulent act must fail as well.  To recover for breach of contract accompanied by a fraudulent act, a plaintiff must show: "(1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach."  *Harper v. Ethridge*, 119, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502 (S.C. Ct. App. 1985)).

Because the Court has concluded that the policies and alleged oral assurances of the defendant did not create a binding contract, the plaintiff necessarily cannot base a claim of breach of contract accompanied by a fraudulent act on those policies and alleged assurances.  Accordingly, the plaintiff cannot satisfy the initial element of her claim.

Likewise, the plaintiff's claim for a breach of the covenant of good faith and fair dealing cannot survive summary judgment.  Where the employment relationship remains at-will and not altered by any mandatory promises, that cause of action is unavailable.  *See Horton v. Darby Elec. Co., Inc.*, 599 S.E.2d 456, 460-61 (S.C. 2004).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the plaintiff's motion for summary judgment [Doc. 37] be DENIED and the defendant's motion for summary judgment [Doc. 53] be GRANTED in part and DENIED in part.  Specifically, the defendant's motion should be GRANTED as to the plaintiff's claims for breach of contract, breach of contract accompanied by a fraudulent act, and breach of the implied covenant of good faith and fair dealing.  The defendant's motion should be DENIED as to the plaintiff's interference and retaliation claims, pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

May 1, 2008
Greenville, South Carolina