IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Debra Dawkins, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:07-1157-HMH-BHH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Milliken & Company, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Bruce Howe Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Debra Dawkins ("Dawkins") alleges violations of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"), and state law claims for breach of contract, breach of contract accompanied by a fraudulent act, and breach of the implied covenant of good faith and fair dealing. Milliken & Company ("Milliken") moved for summary judgment on all claims. Dawkins moved for partial summary judgment as to her FMLA interference claim. In her Report and Recommendation, Magistrate Judge Hendricks recommended granting in part and denying in part Milliken's motion for summary judgment and denying Milliken's motion for partial summary judgment. Dawkins filed objections to the Report and Recommendation. After review and for the reasons below, the court adopts the Report and Recommendation.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1) (2006).

## I. FACTUAL AND PROCEDURAL HISTORY

Dawkins was employed as an inspector for Milliken at its facility located in Blacksburg, South Carolina. (Def.'s Mem. Supp. Summ. J. Ex. D (Pl.'s Dep. at 29).) Dawkins inspected fabric as it ran through a machine and flagged any defective fabric, which she separated from the good fabric. (Id. Ex. D (Pl.'s Dep. at 29) & Ex. C (Deanna Norris ("Norris") Dep. at 32).) In addition, Dawkins sent samples of fabric, known as "lab submits" to the Milliken lab for testing. (Id. Ex. C (Norris Dep. at 40-41).)

In 1993, Dawkins' mother became ill. (Id. Ex. N (Pl.'s Interrogatory Resp. No. 9).) Beginning in November 2003, Dawkins sporadically took FMLA leave to care for her, which Milliken approved. (Id. Ex. L (Def.'s Resp. Joint Rule 26.03 Interrogatories) & Ex. Y (FMLA document).) Norris became Dawkins' immediate supervisor in October 2006 when she was promoted to Production Manager. (Def.'s Mem. Supp. Summ. J. Ex. C (Norris Dep. at 16-17).) On October 5, 2006, Norris distributed a document titled "Read All About It!" ("Call In Policy") to all quality assurance associates, including Dawkins at a meeting. (Id. Ex. P (Dawkins Dep. Ex. 4 (Call In Policy)).) The Call In Policy required that "In any event that you will be absent or late you must notify **both** work and Deanna. Failure to do so will result in an **unexcused absence**. You must leave a message." (Id. Ex. P (Dawkins Dep. Ex. 4 (Call In Policy)).)

On November 28, 2006, Dawkins received a written Associate Reprimand for failing to cut "lab submits" for submission to the Milliken lab in violation of Milliken policy 1.10J (Failure to Follow Instructions). (Id. Ex. M (Interrogatory No. 8) & Ex. J (12/1/06 Written Reprimand).) Dawkins had previously received two verbal warnings for the same conduct. The written reprimand specifically indicates that Dawkins was counseled for the same violation on

October 12, 2006.  (Id. Ex. M (Def.'s Ans. Pl.'s Interrogatory No. 8) & Ex. J (12/1/06 Written Reprimand).)  The reprimand further stated that "any further occurrence will result in disciplinary action up to and including termination."  (Def.'s Mem. Supp. Summ. J. Ex. J (12/1/06 Written Reprimand).)

On January 15 and 16, 2007, Dawkins did not report to work because her mother needed care.  Dawkins alleges that she contacted Norris pursuant to the Call In Policy repeatedly on January 15 and 16 and contacted other supervisors in the Quality Assurance Department.  Dawkins' telephone records indicate that she placed eight calls over those two days to Norris.  (Pl.'s Mem. Supp. Partial Summ. J. Ex. 1 (Dawkins Dep. at 145-46, 181-85).)  Norris alleges that she received no messages or calls from Dawkins.  (Def.'s Mem. Supp. Summ. J.  Ex. C (Norris Dep. at 57-58).)

Norris counseled Dawkins on January 17, 2007, regarding her failure to call on December 20 and 22, 2006, and January 15 and 16, 2007.  (Id. Ex. K (1/17/06 Written Reprimand).)  Norris had also previously counseled Dawkins on December 19 about her failure to comply with the Call In Policy on December 7 and 18, 2006.  (Id. Ex. H (Record of Conversation at 323-24).)  Dawkins was issued an Associate Reprimand for violating Milliken Policy 1.10J for failing to call Norris on January 15 and 16, 2007.  (Def.'s Mem. Supp. Summ. J. Ex. K (1/17/06 Written Reprimand).)  Dawkins' employment was terminated on January 17, 2007, after she met with Norris and Kevin Hall, Plant Human Resources Manager.  (Id. Ex. U (Stephen Giles ("Giles") Dep. at 24-27).)

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in its favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

**B.  FMLA**

The Magistrate Judge recommended denying Milliken's motion for summary judgment on Dawkins' interference and retaliation FMLA claims and recommended denying Dawkins' motion for partial summary judgment on her FMLA interference claim alleging that the Call In Policy violates the FMLA.  Dawkins objects to the Magistrate Judge's Report and Recommendation to deny her summary judgment on the FMLA interference claim.

"The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life."  Price v. City of Fort Wayne, 117 F.3d 1022, 1024 (7th Cir. 1997).  "It does so by recognizing that there will be times in a person's life when that person is incapable of performing her work duties for medical reasons."  Id.  The FMLA entitles eligible employees to twelve (12) weeks of leave during a twelve (12) month period for, among other reasons, a serious health condition that makes the employee unable to perform employment functions.  See 29 U.S.C. § 2612(a)(1)(D) (1999).

Dawkins objects to the Magistrate Judge's recommendation to deny Dawkins' partial summary judgment motion that the Call In Policy violates the FMLA.  The FMLA requires that an employee

> provide notice to her employer when she requires FMLA leave.  Where the need for leave is unforeseeable, an employee should give notice to the employer . . . as soon as practicable under the facts and circumstances of the particular case.  At bottom, an employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee, however, need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.

Rhoads v. F.D.I.C., 257 F.3d 373, 382-83 (4th Cir. 2001) (internal quotation marks, citations and alterations omitted).

Dawkins contends that she provided sufficient notice under the FMLA of her need to take leave and that the Call In Policy violates the FMLA because it requires more than is required by FMLA. Dawkins relies on the Sixth Circuit decision in Cavin v. Honda of Am. Mfg. Corp., 346 F.3d 713, 723 (6th Cir. 2003), which held that while an employer may enact notice requirements, those requirements cannot be more stringent than those required by the FMLA. However, as the Magistrate Judge noted, two other circuits have reached the opposite conclusion. Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706 (7th Cir. 2002); Holmes v. Boeing Co., No. 98-3056, 1999 WL 9760, at *3 (10th Cir. Jan. 12, 1999) (unpublished). The Seventh Circuit found that an employer could enforce a "usual and customary" notice policy so long as "it was not impossible" for the employee to do so under the circumstances. Lewis, 278 F.3d at 710. The Tenth Circuit held that "the FMLA does not prohibit an employer from requiring its employees to give notice to specific company supervisors on the day the employee is going to be absent in a nonemergency situation. . . ." Holmes, 1999 WL 9760, at *3. The court agrees with the holdings in Holmes and Lewis. An employer can require an employee to comply with a notice policy which is more stringent than the FMLA provided that an employee can reasonably comply with the notice policy. Dawkins alleges that she complied with the Call In Policy. Dawkins admits that the Call In Policy was "important just in case if one of us was going to be out, they needed to know so that they could cover the shift ahead of time; have someone work in our place." (Def.'s Mem. Supp. Summ. J. Ex. D (Pl. Dep. at 39).) Therefore,

it was not impossible for her to comply with the Call In Policy. Based on the foregoing, this objection is without merit.

### C. Breach of Contract Claims

Dawkins objects to the Magistrate Judge's recommendation to grant Milliken's motion for summary judgment on the breach of contract claims. Specifically, Dawkins alleges that Milliken altered Dawkins' at-will employment status solely based on "oral policies stated to Plaintiff, on several occasions by Defendant, that progressive discipline must be followed." (Objections 5.) Dawkins contends that a wrongful discharge claim "can rest solely on oral or written representation, even if they contradict other written policies." (Id. 5.)

"At-will employment is generally terminable by either party at any time, for any reason or for no reason at all." Small v. Springs Indus., Inc., 388 S.E.2d 808, 810 (S.C. 1990). "The general rule is that termination of an at-will employee normally does not give rise to a cause of action for breach of contract." Conner v. City of Forest Acres, 560 S.E.2d 606, 610 (S.C. 2002). "[T]he at-will status of an employee may be altered by an oral contract of definite employment. To be binding, an offer must be definite. One must show a specific offer, a communication of the offer to him, and performance of job duties in reliance on the offer." Davis v. Orangeburg-Calhoun Law Enforcement Comm'n, 542 S.E.2d 755, 760 (S.C. Ct. App. 2001) (internal quotation marks and citations omitted). "To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005). However, in the instant case, even if the oral assurances were to be viewed as contractual, Milliken "negated any contractual effect by notifying Plaintiff that h[er] employment was at will." Allan v. Sunbelt

7

Coca-Cola Bottling Co., No. 88-CP-18-936, 1989 WL 299243, at *5 (S.C. Comm. Pleas Aug. 15, 1989) (unpublished).  The Supreme Court of South Carolina in Small v. Springs Indus., Inc. expressly emphasized that an employer retains the freedom to preserve the at-will relationship. The Court stated:

> If an employer wishes to issue policies, manuals, or bulletins as purely advisory statements with no intent of being bound by them and with a desire to continue under the employment at will policy, he certainly is free to do so. This could be accomplished merely by inserting a conspicuous disclaimer or provision into the written document.

357 S.E.2d 452, 455 (S.C. 1987).  Thus, where an employer has affirmatively expressed its desire to preserve the at-will relationship with its employees, an oral policy cannot provide the basis for a contrary contract claim.

Milliken's policy, which Dawkins signed, contained a conspicuous disclaimer which stated as follows :

> **I AGREE THAT, IF HIRED, EITHER MILLIKEN & COMPANY OR I MAY TERMINATE MY EMPLOYMENT AT ANY TIME WITH OR WITHOUT CAUSE.  I UNDERSTAND THAT NO COMPANY POLICY, PRACTICE, PROCEDURE, OR STATEMENT BY ANY COMPANY REPRESENTATIVE SHALL LIMIT OR ALTER THIS AT-WILL EMPLOYMENT RELATIONSHIP.**

(Def.'s Mem. Supp. Summ. J. Ex. F (Production Employment Slip).)  Dawkins alleges that she was orally informed on numerous occasions that she could not be terminated unless she received two written reprimands for the same offense in a six-month period.  (Id. Ex. D (Pl.'s Dep. at 206).)  Milliken's written policy 1.11 provides that "[r]epetition of an offense for which an associate has received two (2) written reprimands for the same offense or three (3) written reprimands on different subjects or offenses within (12) consecutive months will subject an associate to termination."   (Id. Ex. J (12/1/06 Written Reprimand) & Ex. K (1/17/07 Written

Reprimand).) Dawkins signed immediately below this language on both written reprimands.

(Id.) In addition, Dawkins repeatedly signed Record of Conversations notes which stated:

> Associates may be discharged for having two (2) written reprimands for the same offense or three (3) written reprimands for different offenses during any twelve (12) month period. Management will determine appropriate discipline in any situation. Associates may be reprimanded or discharged for violations of company rules, or for other situations not covered by company rules. Some offenses are serious enough to require immediate discharge without prior reprimand.

(Id. Exs. H & I (Records of Conversations).)

In addition, in Conner, the South Carolina Supreme Court held that the inquiry should also include whether the employee handbook contains any mandatory or promissory language, and if so, then a jury should decide whether the at-will nature of the employment is modified by the handbook. 560 S.E.2d at 611.

Milliken's policy is unambiguously couched in non-mandatory terms and further, the disclaimer specifically provides that no statement by a company representative can alter the at-will relationship. Milliken has unambiguously and affirmatively expressed its desire to preserve the at-will nature of Dawkins' employment through its written policies and disclaimers and the non-mandatory language of its written policies. Based on the foregoing, Dawkins' testimony that Milliken orally assured her that it would comply with mandatory progressive discipline fails to create a genuine issue of material fact. Therefore, after a thorough review of the Magistrate Judge's Report and the record in this case, the court adopts the Magistrate Judge's Report and Recommendation.

Therefore, it is

**ORDERED** that Milliken's summary judgment motion, docket number 53, is granted in part and denied in part. It is further

**ORDERED** that the Plaintiff's motion for summary judgment, docket number 37, is denied.

**IT IS SO ORDERED.**

                                                  s/Henry M. Herlong, Jr.
                                                  United States District Judge

Greenville, South Carolina
May 21, 2008